2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISON

United States District Court
Southern District of Texas
FILED

JAN 1 1 2001

Michael N. Milby
Clerk of Court

| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | Criminal No. B-97-490-S1-04 |
| | § | Civil Action: _____ |
| | § | |
| ARTURO PENA, | § | B-01-007 |
| PETITIONER | § | |
| | § | |
| | § | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY**

---

INTO THE UNITED STATES DISTRICT COURT NOW COMES, the petitioner, **ARTURO PENA**, acting in "pro se" fashion and being assisted by inmate counsel, respectfully moves this Honorable Court to grant leave of the Court unto the Petitioner, as a "Pro Se Litigant", and not sophiscated in the law. The Petitioner request that this 28 U.S.C. § 2255 motion be considered on the merits under the "Less Stringent Standards" as applied in HAINES -v- KERNER, 404 US 519, 90 L.Ed 2d 652, 92 S.Ct. 594.

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Therefore, this Petitioner will rely on this "Memorandum of Law in Support of Petitioner's Motion" to which the attention of this Honorable Court is respectfully invited.

**JURISDICTION**

This Court has the Jurisdiction to hear and decide on this pleading, because the Petitioner appeared before the Honorable Filemon B. Vela and entered a Plea of Guilty to Count(s) (2) and (4) of a Four Count Indictment on March 5, 1998 and was Sentenced on May 28, 1998.

Under the Provision of 28 U.S.C. § 2255, a prison in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution of Laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

This Court should determine "whether the claimed error(s) of Law was a fundamental defect which inherently resulted in a complete miscarriage of justice, and whether it present exceptional circumstance where a need for the remedy afforded by the writ of habeas corpus is apparent". See: **CASPER -v- RYAN**, 822 F.2d 1283 (3rd. Cir. 1987), cert. denied, 848 US 1012 (1988), accord **UNITED STATES -v- DIGGS**, 1993 Wl140740 (E.D. Pa. May 4, 1993).

**INTRODUCTION**

The Federal Court System has created an extremely narrow road in the field of post-conviction, with **"BOOBY-TRAPS"** designed to prevent a petitioner from obtaining relief. The issue "must" be properly raised to slide around the procedural default rule. For example, see: **WAINWRIGHT -v- SYKES**, 433 US 72, 97 S.Ct. 2497, 53 L.Ed 2d 594 (1977) and **FRADY -v- UNITED STATES**, 456 US 152 (1982).

The pitfalls created, based on the procedural default rule, requires a criminal defendant to establish "cause" for failure to raise the issue at the trial court level or on direct appeal. Another prime example is **UNITED STATES -v- VAUGHAN**, 955 F.2d 367 (5th Cir. 1992), where the court held that a District Court's technical application of the guideline do not give rise to a Constitutional issue, and is not cognizable under the limited scope of relief available under 28 U.S.C. § 2255.

However, if **VAUGHAN**, **supra**, had argued that his attorney was ineffective for failing to object to the enhancement for obstruction of justice under the sentencing guidelines, the issue would have been cognizable under 28 U.S.C. § 2255. In **NEALY -v- UNITED STATES**, 988 F.2d 563 (8th. Cir. 1993), where that Court held that "INEFFECTIVE ASSISTANCE" claim could not be dismissed without an evidentiary hearing, where records appeared on it face insufficient to support the enhancement of the defendant's sentence, yet defense counsel, having properly objected to enhancement at sentence, failed to raise it as a issue on appeal.

This "Writ of Habeas Corpus" under 28 U.S.C. § 2255 stems from an illegal sentence and an incorrect application of the law. The petitioner can satisfy the requirement to this Court and will demonstrate that the issue(s) are debatable among jurists of reasons; and or that the question are adequate to deserve encouragement to proceed further. Now if a court withholds an effective remedy from the victim of an unconstitutional court action(s), then the Court under habeas corpus statue (28 U.S.C. § 2255), have the power and duty to provide the corrected recourse. See: **FAY -v- NOIA**, 372 US 391, 9 L.Ed 2d 837, 83 S.Ct. 822.

The petitioner's application for relief comes late in the day: He have served some (36) months in prison. But "tardiness" is irrelevant where a constitutional issue is raised and where the petitioner is still confined. See: **HAIER -v- UNITED STATES**, 334 F.2d 441 (10th. Cir. 1964

## STATEMENT OF THE CASE

On December 22, 1997, a Federal Grand Jury in Brownsville, Texas filed a Four Count Indictment, in Criminal Docket Number B-97-490-01, charging Horacio Garcia-Castro, Guadalupe Ortiz-Aurelio, Javier Munoz, and the Petitioner. Count (1) charges all defendants with conspiracy to possess, with intent to distribute, a quantity, in excess of five hundred (500) grams, in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(B). Count (2) charges all defendants with possession, with intent to distribute, a quantity that is more than five hundred

CUMPDF - www.fastio.com

(500) grams of cocaine, to wit: approximately five hundred-twelve (512) grams of cocaine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B). Count (3) charges all defendants with possession, with intent to distribute, a quantity of five hundred and twenty-two (522) grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2 aiding and abetting. Count (4) charges all defendants with possession, with intent to distribute, three hundred and twenty-seven (327) grams of cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B) and 18 U.S.C. § 2.

On March 5, 1998, the Petitioner, appeared before the Honorable Filemon B. Vela and entered a plea of guilty to Count (2) and (4) of the indictment. A written plea bargain agreement called for a dismissal of the remaining counts, with a recommendation to sentence the petitioner at the lower end of the applicable sentencing guideline range, minus a two (-2) level reduction for an early acceptance.

The Court accepted the petitioner's plea of guilty and ordered a Presentence Investigation Report (PSI); because sentencing was set for May 28, 1998. This petitioner understood that the sentence to be imposed is within the "DISCRETION" of the Sentencing Judge. If the Court should impose (any) sentence up to the maximum established by the statue, the petitioner could not withdraw his plea and was bound to fulfill the obligations in the agreement. In the body of the agreement, the petitioner reserved the right of title 18 U.S.C. § 3742.

On March 19, 1998, the Petitioner testified on behalf of a Co-Defendant's (Horacio Garcia-Castro) trial. The Court found that the testimony provided by the petitioner was false and inconsistent to what he had accepted as his offense conduct at the time of his plea. The petitioner's counsel was not present at those proceedings and the petitioner had to stand un-protected in the land of wolves. For the omissions that the petitioner professed in those proceedings, this left him open to a violation of the U.S.S.G **§ 3C1.1.**

On May 28, 1998, the petitioner appeared before this court and was sentenced to a term of imprisonment pursuant to the **Sentencing Reform Act of 1984** for a period of (78) months. The Sentencing Judge made a determination not to sanction the petitioner with a (2) level increase for the alleged obstruction of justice under **Commentary Application Note 3(f),** and instructed the Probation Department to "REMOVE" the applied level increase. In furtherance of the order, the Sentencing Judge directed an "additional" (3) level decrease for the petitioner, cause it was within the Sentencing Judge's "Discretion".

Inaccordance with the **UNITED STATES SENTENCING GUIDELINES,** for Counts (2) and (4), the base offense level was established at a level of (26). With the incident that occurred on March 19, 1998 and the possible additional two (2) level increase, that would have raised the base offense level to (28). However, The Honorable Judge Vela exonerated the petitioner of those two (2) level increase and rewarded the petitioner with his early acceptances.

I.

## A DEFENDANT IS ENTITLED TO BE SENTENCED
## BASED ON INFORMATION WHICH IS MATERIALLY TRUE

The Presentence Investigation Report contains several factual inaccuracies, presumably offered by the Government, which are not supported by evidence and indeed, are contradicted by facts known to the Government.  These inaccuracies, which was believed by the Court resulted in a harsher and unjustified sentence and has adversely effect the petitioner's place of incarceration.

It is clear that a "Rational penal system must have some concern for the probable accuracy of this informational inputs in the sentence process".  **UNITED STATES -v- WESTON**, 448 F. 2d 626 (9th. Cir. 1971), cert. denied, 404 US 1061 (1972).  Thus, when a Sentencing Court is confronted with inaccurate information in a Presentence Report, and signigicantly relies on that misleading information in formulating a sentence, the United States Supreme Court has held that the sentence must be vacated and remand for further proceeding more consistent with notions of fairness and due process of law.  See: **TOWNSEND -v- BURKE**, 334 US 736 (1948); cf. **UNITED STATES -v- LEE**, 818 F.2d 1052 (2d. Cir. 1987), cert. denied, 484 US 956 (Sentencing Court is required to assure itself that information upon which it relies when fixing sentence is reliable and accurate).

District Court have become more sensitive to the requirements for disclosure of the presentence report to both the defendant and

CISPDF - www.fsvna.com

CVisPDF – www.fasiso.com

defense counsel. The importance of this disclosure requirement was underscored in a study of the federal presentence report, which observed:

> The defendant's interest in an accurate and reliable presentence report does not cease with the impostition of sentence. Rather, these interests are implicated at later stages in the correctional process by the continued use of the presentence report as a basic source of information in the handling of the defendant.

FENNEL & HALL, "Due Process at Sentencing: An Empirical and legal analysis of the disclosure of presentence reports in Federal Courts", 93 HARVARD LAW REVIEW 1613,1651 (1980). See also Frank Giorno, "Federal Criminal Sentencing: The Case for Evidentiary Standard," 13 LOYOLA UNIVERSITY LAW JOURNAL 875 (1982).

Thus, the Ninth Circuit has stated:

> increased quantities of information available to (presentence) investigators does not assure improved reports if no attention is paid to the accuracy of that information. Currently, factual errors in presentence reports are commonplace. Allegations of inaccurate decision making due to these factual errors are widespread. If our holding results in meaningful access to presentence reports, it will both encourage investigators to be more conscientious and enable defendants to challenge inaccuracies. This may increase the accuracy of presentence reports, and improve the correctional decision making process. (citation omitted)

BERRY -v- DEPARTMENT OF JUSTICE, 733 F.2d 1343 (9th. Cir. 1984).

II.

**RULE 32 REQUIRES A DISTRICT COURT TO CORRECT FACTUAL
ERRORS IN THE PRESENTENCE REPORT, REGARDLESS OF
WHETHER THIS INFORMATION WILL SUBSTANTIALLY AFFECT
THE COURT'S SENTENCE.**

Pursuant to an order by the United States Supreme Court, on August 1, 1983, a new paragraph was added to **RULE** 32 of the Federal Rules of Criminal Procedure, to wit:

> **(c)(3)(D)** if the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or party thereof, the Court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

As the report of the Judicial Conference Committee on Rule of Practice and Procedures stated in its notes to accompany this Rule **(House Doc. 98-55, 98th. Cong. 1st. Session, April 28, 1983):**

> The Bureau of Prisons and the Parole Commission make substantial use of the Presentence Investigation Report. Under current practice, this can result in reliance upon assertions of fact in the report in making of critical determinations relating to custody or parole. For example, it is possible that the Bureau or Commission, in the course of reaching a decision on such

> matters as institution assignment,
> eligibility for programs, or computation
> of salient factors, will place great
> reliance upon factual erosions in the
> report which are in fact untrue and
> which remained un-challenged at the
> time of sentencing because defendant
> or his counsel deemed the error
> unimportant in the sentencing context
> (e.g. where the sentence was expected
> to conform to an earlier plea agreement,
> or where the Judge said he would
> disregard certain controverted matter
> in setting the sentence).

See also: **GIORNO, supra,** part of the problem was highlighted in a little known but revealing study of the practices of the United States Parole Commission. In "Parole Release Decision Making and the Sentencing Process" project, **YALE LAW JOURNAL 84 (1975),** it was observed that when the presentence reports are incomplete or unreliable, hearing examiner "do not appear to use the hearing as an opportunity to check accuracy or correct possible misinformation relevant to rating an inmate's offense severity". **Id. at 86.** Instead, the examiners are reluctant to believe an inmate's account of the offense, especially when an inmate asserts that he or she did not commit all of the offenses listed in an indictment but not proven at trial or by plea, or was less culpable than other co-defendants.

Thus, notwithstanding any statement by a Court that it intends not to rely upon certain facts in dispute, it is the defendant's position that this court is under an obligation to correct unreliable and unrepresentative information in the presentence report, especially when that information can be shown to affect the practices of either the U.S. Bureau of Prison or the U.S. Parole Commission.

In **UNITED STATES -v- VELASQUEZ**, 748 F.2d 972, 974 (5th. Cir. 1984), the fifth circuit expressly recognized the effect of an erroneous prsentence report beyond the impact on the Sentencing Judge. Moreover, the **VELASQUEZ's** decision removes any doubt as to whether a District Court must respond to a defendant's objection or claim to the report.

Nor does the recommended procedure for making such a correction to a presentence report solve the problem. Rather than making an addendum to the report, it is submitted that the better procedure is for the Court to order the U.S. Probation Service to incorporate the correction within the body of the report. In this manner, the U.S. Parole Commission, for example, would be less likely to simply ignore the finding of the court, and select the fact more favorable to the Government's version of the offense or any statement. As noted in **THE COMMISSION'S PROCEDURES MANUAL** (October 1, 1983, section 2.19(d),p.23):

> Recommendations and information from Sentencing Judges, Defense Attorneys, Prosecutors, and other interested parties are welcomed by the Commission...Thus, to be most helpful, a recommendation should state its underlying factual basis and reasoning. However, no recommendation (including a prosecutorial recommendation pursuant to plea agreement) may be considered as binding upon the commission's discretionary authority.

The presentence report in this instant case contains several factual inaccuaracies. The Government, by way of "information" provided to the U.S. Probation Service, has tainted the petitioner's presentence investigation report and potentially prejudiced the petitioner.

On May 28, 1998, inaccordance with the "Transcript of the Sentencing Proceedings", the Honorable Filemon B. Vela instructed the Probation Department to correct the petitioner's presentence investigation report (PSI). On page five (5), line (2) thru (4) of the Sentencing Transcript, This Distinguishable Gentleman ordered the Probation Department to administer a three point level "decrease" in the offense level. In addition to the "Diminution" in levels, it was further ordered to not charge the petitioner with "obstruction of justice under the provision of U.S.S.G. § 3C1.1.

Apparently, the Probation Department was incapable of understanding the implication from the "Authoritarian Power" of the Court and challenged its instruction. The Court stood firm on the scale of justice and removed the blind fold by stating to the Probation Officer to "Remove those Points". Therefore, to the common listener who understands the english language, there should not had been any misconception of the command.

The Petitioner's offense level in this instant case, for count (2) and (4), was established at level twenty-six (26) in Category III (3) (as stated in the PSI at ¶ 57), minus three (3) level reduction for early acceptance of responsibility. To a person, with the minimal educational level of a third grader, the understanding of the "mathematical equation, should have been formulated to the offense level of twenty-three (23) in the same category. If this were true, then this would place the petitioner in the sentencing range of (57) to (71) months instead of the sentencing range of (78) to (97) months.

CVAPDF - www.fasiia.com

Subsequently, the petitioner was sentenced to an additional twenty-one (21) months, which constitute an illegal sentence and therefore the petitioner should be remand back to this court for resentencing.

However, the analogy as stated above is incorrect also. According to the PSI ¶ 53 & 54 the petitioner had two (2) criminal history points. This would place the petitioner in category II instead of category III. Subsequently, if the petitioner was placed in the correct category of II at level (23), then the petitioner would have been sentenced between (46) to (57). This makes an outstanding difference of (32) months.

In accordance with the **RULE 11 (e)(1)(c)** proceeding, the petitioner agreed to the low end of the guidelines. Therefore, the petitioner should be remand and re-sentenced to (46) months, minus the time spent in custody, plus the pre-trial credit of (123) days, which would result in an **"immediately"** release from the Bureau of Prison.

Eventhough, the Court departed from the guidelines, the Judge must address objections to the pre-sentence report and make a factual finding concerning any disputed issue. See: **UNITED STATES -v- BURCH,** 873 F.2d 765 (5th. Cir. 1989). The failure of the Sentencing Court to resolve a contested matter in the pre-sentence report requires a remand in light of the Probation Department's reliance on the contested issue in preparing the pre-sentence report and in calculating the sentence range. See: **UNITED STATES -v- PALTA,** 880 F.2d 636 (2nd. Cir. 1989).

The foregoing facts have resulted in the petitioner being deprived of his liberty without dur process of law, in violation of the **FIFTH & EIGHT AMENDMENT** to the Constitution of the United States. In **UNITED STATES -v- EDUN**, 750 F.Supp 337 (N.D. Ill 1990), a motion to vacate, set aside, or correct sentence can be denied without an evidentiary hearing when record conclusively demonstrates that petitioner is not entitled to relief. However, under the provision of **FED.R.CRIM.P. RULE 36**, it permits this Court to correct a "clerical error in its Judgment at any time. It is further submitted that, particularly given the fact that the Government did not object to the petitioner receiving the credit, this Court should amend or correct its judgment to recommend that the petitioner receive the (32) months adjustment to reflect the order on May 28, 1998.

### WHETHER THE INADEQUATE REPRESENTATION THAT PETITIONER RECEIVED AT SENTENCING FALLS BELOW AN OBJECTIVE REASONABLE STANDARD, THUS VIOLATING PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES CONSTITUTIONS.

The **SIXTH AMENDMENT** to the United States Constitution set forth petitioner's guarantee to the effective assistance of counsel at trial. The inadequate representation afforded petitioner is in derogation of the principles set forth in the above Constitutional provisions, as well as those of **STRICKLAND -v- WASHINGTON**, 466 US 668, 80 L.Ed 2d 674, 104 S.Ct. 2052 (1984). **STRICKLAND**, illustrates the two elements of an ineffective assistance claim necessary to warrant reversal of conviction. First, the aggrieved party must prove that counsel's performance at trial fell below an objective standard of reasonableness. **Id. at 687-88.** Second, there must be a reasonable probability that, but for the wrongful acts and omissions of counsel, there would have been a different result at trial. **Id at 694.** The 8th. Circuit has echoed those principles in **UNITED STATES -v- FORD**,

918 F.2d 1343 (8th. Cir. 1990).

The Court in **FORD** held: that trail counsel's failure to object to the probation officer's neglect to reduce **FORD**'s base offense level for accepting responsibility in accordance to the sentencing guidelines constitute performance below an objective standard, and there exist a reasonable probability that **FORD**'s sentence would have been reduced by over three (3) years, absent counsel's unprofessional errors and omissions.

An Attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is held ineffective, even if trial court and prosecutor are also ignorant of relevant change in the law. See: **BAKER -v- BARBO**, 177 F.3d 149, (3rd. Cir. 1999). That Court held: That an attorney can be ineffective by giving a defendant false information about sentencing, thereby inducing the defendant to plea guilty instead of going to trail. See: **MEYERS -v- GILLIS**, 142 F.3d 664 (3rd. Cir. 1998). In **MEYERS**, the Court found that a defense attorney was mistaken in informing his client that he would be eligible for parole in a case where the offense to which the defendant pled guilty carried a mandatory life sentence. The Court reasoned that there was prejudice because there was evidence that, but for the attorney's advise, the defendant would not had pled guilty, and might have been convicted of a lesser offense. **Id at 664**. Similarly, there can be no doubt that an attorney can be ineffective in giving his client advise which lead him to turn down a favorable plea agreement if the attorney is

The foregoing facts have resulted in the petitioner being deprived of his liberty without dur process of law, in violation of the **FIFTH & EIGHT AMENDMENT** to the Constitution of the United States. In **UNITED STATES -v- EDUN**, 750 F.Supp 337 (N.D. Ill 1990), a motion to vacate, set aside, or correct sentence can be denied without an evidentiary hearing when record conclusively demonstrates that petitioner is not entitled to relief. However, under the provision of **FED.R.CRIM.P. RULE 36**, it permits this Court to correct a "clerical error in its Judgment at any time. It is further submitted that, particularly given the fact that the Government did not object to the petitioner receiving the credit, this Court should amend or correct its judgment to recommend that the petitioner receive the (32) months adjustment to reflect the order on May 28, 1998.

## WHETHER THE INADEQUATE REPRESENTATION THAT PETITIONER RECEIVED AT SENTENCING FALLS BELOW AN OBJECTIVE REASONABLE STANDARD, THUS VIOLATING PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES CONSTITUTIONS.

The **SIXTH AMENDMENT** to the United States Constitution set forth petitioner's guarantee to the effective assistance of counsel at trial. The inadequate representation afforded petitioner is in derogation of the principles set forth in the above Constitutional provisions, as well as those of **STRICKLAND -v- WASHINGTON**, 466 US 668, 80 L.Ed 2d 674, 104 S.Ct. 2052 (1984). **STRICKLAND**, illustrates the two elements of an ineffective assistance claim necessary to warrant reversal of conviction. First, the aggrieved party must prove that counsel's performance at trial fell below an objective standard of reasonableness. **Id. at 687-88.** Second, there must be a reasonable probability that, but for the wrongful acts and omissions of counsel, there would have been a different result at trial. **Id at 694.** The 8th. Circuit has echoed those principles in **UNITED STATES -v- FORD,**

918 F.2d 1343 (8th. Cir. 1990).


The Court in **FORD** held:  that trail counsel's failure to object to the probation officer's neglect to reduce **FORD**'s base offense level for accepting responsibility in accordance to the sentencing guidelines constitute performance below an objective standard, and there exist a reasonable probability that **FORD**'s sentence would have been reduced by over three (3) years, absent counsel's unprofessional errors and omissions.


An Attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is held ineffective, even if trial court and prosecutor are also ignorant of relevant change in the law. See:  **BAKER –v– BARBO,** 177 F.3d 149, (3rd. Cir. 1999).  That Court held:  That an attorney can be ineffective by giving a defendant false information about sentencing, thereby inducing the defendant to plea guilty instead of going to trail.  See:  **MEYERS –v– GILLIS,** 142 F.3d 664 (3rd. Cir. 1998).  In **MEYERS,** the Court found that a defense attorney was mistaken in informing his client that he would be eligible for parole in a case where the offense to which the defendant pled guilty carried a mandatory life sentence.  The Court reasoned that there was prejudice because there was evidence that, but for the attorney's advise, the defendant would not had pled guilty, and might have been convicted of a lesser offense.  **Id at 664.**  Similarly, there can be no doubt that an attorney can be ineffective in giving his client advise which lead him to turn down a favorable plea agreement if the attorney is

not aware of the applicable basic sentencing law.

In this Circuit Holding in **UNITED STATES –v– BARTHOLOMEW**, 974 F.2d 39 (5th. Cir. 1992), that held that trial counsel's failure to read and review the PSI with defendant constituted performance below an objective standard of reasonableness which meets the first prong of **STRICKLAND**, but defendant must show prejudice.  In **UNITED STATES –v– STEVENS**, 851 F.2d 140, 145, (6th. Cir. 1988), Counsel failed to inform the Court of errors in PSI, this constitute a deficent perfomance under **STRICKLAND** test.  And in **RYDER –v– MORRIS**, 752 F.2d 327, 332-33 (8th. Cir.1985), counsel failed to object to inaccuracies in PSI amounts to ineffective assistance and requires an evidentiary hearing.  With this type of ineffective assistance of counsel, the petitioner is requesting to appear before this Court to resolve the disputed errors and be sentenced to the correct sentencing range of his **RULE 11 COLLOQUY**.

The Government might take the position that a **RULE 32** violation is not cognizable on collateral attack because it could have been raised on direct appeal or in an earlier motion to correct a sentence using **UNITED –v– PRINCE**, 868 F.2d 1379, 1386 (5th. 1989), to base their argument.  However, the holding in **PRINCE** does not preclude 28 U.S.C. § 2255 relief from a **RULE 32** violation.  Rather, this petitioner, must convince the Court to make a determination whether motion.  The records will conclusively show that this issue could not have been raised on appeal or a previous motion.

This Circuit has held that an evidentiary hearing was required to permit Magistrate to determine whether petitioners could demonstrate cause for procedural default, either by showing, objective, external factors, or by showing ineffective assistance of counsel. The petitioner can meet all requirements that was set forth in the Court of **UNITED STATES -v- ACKLEN**, 47 F.3d 739 (5th. Cir. 1995).

In **BUFFALO -v- SUNN**, 854 F.2d 1158 (9th. Cir. 1988), the Court established the "cause" due to Hawaii prison officials had placed **BUFFALO** in lock down, which amount to official impediment. See: **AMADEO -v- ZANT**, 486 US 214, 100 L.Ed 2d 249, 108 S.Ct. 1776-77 (1988)(procedural default excused if caused by some external, objective, impediment) **MURRAY**, 477 US 488, 106 S.Ct. 2645.

The Petitioner is proceeding before this Court, "pro se", not out of his desire to do so voluntarily, rather, he is doing so because he has been abandoned by his trial counsel. As petitioner is not sophisticated in the law, he has engaged the "pro bono" assistance of "inmate counsel", who is assisting petitioner with the preparation of documents since petitioner was abandoned by counsel. In that regard, inmate counsel didn't assist petitioner, until his arrival to the new institution where petitioner is incarcerated. Prior to the pro bono assistance of inmate counsel, the petitioner has been on what is called **"DIESEL THERAPY"** and also was unable to establish any relationship with any inmate counsel. In furtherance, due to this so-called "diesel therapy", this petitioner has been in the Special Housing Unit (SHU) at F.C.I. Big Spring for more than seven

(7) months.  Upon release from "SHU", the petitioner was place in transit and was temporary designated at "F.T.C. Oklahoma".  At this Transfer Center the Law Library is very limited and no-one was available to assist the petitioner.  The petitioner was re-located once again and arrived at his current location where he requested the assistance of inmate counsel.

The **BARTHOLOMEW** court held that the period of time between conviction and the filing of § 2255 motion, a **RULE 32** requirement, that insure a defendant is apprised of the content of a PSI and has an opportunity to object to inaccurate information was designed to protect the integrity of the sentencing proceed.  This Court has the power to correct a **Rule 32** violation on collateral attack if the § 2255 movant can demonstrate that the error could not have been brought to the court's attention at an earlier period of his incarceration.  With the abandonment of counsel, the diesel therapy by the B.O.P. and the lack of knowledge of the law, under these condition, the petitioner meets the test that was set in **BARTHOLOMEW**.

Responsibility of Counsel does not stop when client is found guilty or sentence is pronounced.  See: **SMOTHERMAN -v- BETO**, 276 F.Supp 579 (5th. Cir. 1967) and **ROE -v- FLORES-ORTEGA**, US No. 98-1441, decided 2-23-2000, 526 US 1097, 119 S.Ct. 1574, 146 L.Ed 2d 742. In **DOUGLAS -v- PEOPLE OF STATE OF CALIFORNIA**, 372 US 353, 9 L.Ed 2d 811 (1963), the Court found condemnable states practice whereby:

> The rich man, who appeals as of right,
> enjoys the benefit of counsel's
> examination into the record, research
> of the law, and marshaling of arguments

> on his behalf, while the indigent,
> already burdened by a preliminary
> determination that his case is without
> merit, is forced to shift for himself.
> Id. at 815.

If the right to counsel is to have substance, it must extend to the defendant at the one stage of the criminal proceedings when is least capable of standing on his own. The preliminary determination that the petitioner's case is without merit, as rendered by trial counsel, is an onerous handicap on the petitioner's ability to perceive not only that he is entitled to appellate redress, but moreover that any merit exists therein.

When Counsel choose to provide representation for a defendant, it must assure that the defendant constitutional right remain inviolate from the beginning of the trial up to and including the appellate review, or in the absence of an appeal, to such time as the defendant intelligently waives an appeal or any post-conviction relief. To this end, counsel must advise the defendant not only that he has a right to appeal, but he must admonished of any time limitations on the right to appellate review or post-conviction relief, which the court has imposed. See: **ROE -v- FLORES-ORTEGA**, supra, **SMOTHERMAN**, supra and **FOX -v- STATE OF NORTH CAROLINA**, 266 F.Supp 19 (E.D.N.C. 1967). Counsel has a constitutionally imposed duty to consult with the defendant about an appeal, when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

The decision as to whether or not to appeal a conviction is, of course, that of the indigent defendant. He is no less a client than the defendant who has the funds to retain counsel. Therefore, a waiver of the right to appeal cannot intelligently be made in the absence of counsel's examining the trial proceedings and, if necessary, researching the law for possible errors and therefore admonishing the defendant of the possibilities for relief, or lack thereof, which an appeal would afford him. This is not requiring too much of trial counsel. The petitioner's counsel defended the petitioner's case. If anyone is cognizant of the merit in an appeal....it is him.

After reviewing the records, this court will make the finding that petitioner's **SIXTH AMENDMENT** rights were violated by this counsel. This imcompetent counsel never examined the records for possible errors and did not advise the petitioner of his post-conviction relief rights. The main purpose of this counsel was to commit a legalize crime and drop his responsibilities on the court and inmate counsel. If the court would tolerate the petitioner's **FIRST AMENDMENT** rights a little longer, it would delve that petitioner's counsel did not protect the petitioner's **FIFTH AMENDMENT** rights and his **SIXTH AMENDMENT** right were violated by this professed retained incompetent counsel.

First, there is the issue of the **RULE 32** violation, which petitioner has mentioned in detail. Secondly, there is the issue on March 19, 1998, that this court **"sarcastically"** reprimand counsel

on May 28, 1998 and finally, the omission of counsel's duty to advise the petitioner about his post-conviction right. With all of this, Counsel was incompetent and subsequently, placed "meat and bread" on his table with the retainer from the Petitioner for a "piss-poor" job. This Honorable Court would not have a hard decision to determine that counsel did not fulfill his professional duty as a competent officer of this Court to protect the constitutional rights of the petitioner. In totality of counsel ineffective assistance, this court should be honored to resolve this claim and grant the petitioner's pleading.

In **BAKER -v- KAISER**, 929 F.2d 1495, 1495-1500 (10th. Cir. 1991) defense counsel's failure to ask defendant whether he wanted to appeal and failed to discuss the merits of an appeal, constituted ineffective assistance. As the record of the petitioner, it will show that counsel would have had a **"dead-bang"** winner. See: **UNITED STATES -v- COOK**, 45 F.3d 388 (10th. Cir. 1995). However, failing to raise this obvious issue on appeal or any post-conviction relief motion constitute "cause" even if counsel's ineffectiveness did not violate the constitution under the requirement of **WAINWRIGHT -v- SYKES**, 433 US 72, 97 S.Ct. 2497, 53 L.Ed 2d 594 (1977). See: **GRAY -v- GREER**, 778 F.2d 350 (7th. 1985).

## NECESSITY OF EVIDENTIARY HEARING

Petitioner's sentencing proceeding was plagued by fatal flaws. His represention did not rise to the level of minimal standards

required of counsel by the United States Constitution. The fundamental deprivation of petitioner's constitutional right to effective assistance of counsel renders petitioner's sentence voidable. The petitioner continues to search for which he has sought for more than (37) months; a chance for a fair sentence for all the evidence relevant to the determination of his criminal culapability.

Petitioner herein request an evidentaiary hearing, as there are certain factual allegations, supported by documents, which require the attention of this Honorable Court. This Petition is not susceptible to summary judgment, in that there are factual disputes and allegations regarding matters which fall outside the scope of the record. **STATE -v- MILANOVICH**, 42 Ohio St. 2d 46, 71 Ohio Op. 2d 26, 325 N.E. 2d 540 (1975).

Therefore, petitioner respectfully request this Honorable Court to set this matter for an evidentiary hearing pursuant to **RULE 8** of § 2255 proceedings and, further, to memorialize its decision in the form of findings of fact and conclusions of law.

### WHETHER DEFENSE COUNSEL WAS INEFFECTIVE TO ALLOW PETITIONER'S PRIOR CONVICTION TO BE SCORED IN PETITIONER'S CRIMINAL HISTORY CATEGORY.

In determining whether a misdemeanor conviction is similar to misdemeanor offense listed by sentencing guidelines, and thus generally should not be counted in determining criminal history score, should a court consider all possible factors of similarity, i

including comparison of punishments imposed for listed and unlisted offenses, perceived seriousness of offense indicated by level of punishment, elements of offense, level of culpability involved, and degree to which commission of offense indicates likelihood of recurring criminal conduct.  See: 18 U.S.C.A. App. and U.S.S.G. § 4A1.2(c)(1).

As a general rule, misdemeanor offense are to be counted in computing a criminal history score.  See: U.S.S.G § 4A1.2(c). Guidelines section 4A1.2(c)(1) and (c)(2), however, set out a list of certain offenses "and offenses similar to them" that are not to be counted.  These listed offenses and those similar to the should be excluded, unless (A) the term of probation is greater than "one" year or the term of imprisonment is greater than "30" days, or (B) the prior offense is similar to the current offense.  Other listed offenses and those similar to them are never to be counted regardless of the penalty imposed.  § 4A1.2(c)(2).

The petitioner had a misdemeanor case (8) years and (2) months ago (¶ 53 on PSI).  This petitioner was sentenced to (3) months deferred adjudication probation and a ($200) fine.  Since the petitioner received only the probation and the fine, minus any imprisonment, this misdemeanor conviction should not be counted if it is similar to one of the offenses on either list in the guidelines.  First, the misdemeanor is not similar to the instant case at bar.  Therefore, it meets the provision of (B) under § 4A1.2(c)(1).  Under (A) of the provision the petitioner can win

CISPDF - www.tesisx.com

this test with no hands, and there is no similarity to the Bar. Therefore, the criminal history point should not be counted.

Now this Circuit has been presented with this situation before in **UNITED STATES -v- HARDEMAN**, 933 F.2d 278, 281-83 (5th. Cir. 1991). In that court, it held that the petitioner's misdemeanor was improper calculated in his criminal history score. The punishment for this misdemeanor was not serious and was not counted. At whatever determination of this court, it will surely derive that the petitioner's counsel was ineffective for not objecting to this in the sentencing hearing.

If this Court apply the **RULE OF LENITY** and resolve the ambiguity in (the petitioner's) favor. **UNITED STATES -v- GRANDERSON**, 511 US 39, 54, 114 S.Ct. 1259, 127 L.Ed 2d 611 (1994). See also: **UNITED STATES -v- HASAN**, 205 F.3d 1072, 1075 (8th. Cir. 2000). This policy embodies "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should". **UNITED STATES -v- WEBB**, 218 F.3d 877 (8th. Cir. 2000)(quoting **UNITED STATES -v- BASS**, 404 US 336, 348, 92 S.Ct. 515, 30 L.Ed 2d 488 (1971); quoting Henry Friendly, Mr. Justice Frankfurther and the Reading of Statutes, Benchmarks, 1967, at 196, 209).

Therefore, the petitioner, request that this Court apply the "Rule of Lenity" and reverse the application of the criminal history point and order the petitioner back to Court for re-sentencing.

## UNDUE DELAY

**Rule 9(a) of Section 2255 Proceeding states:**

> A motion for relief made pursuant to
> these rule  may be dismissed if it
> appears that the government has been
> prejudiced in its ability to respond
> to the motion by delay in its filing
> unless the movant shows that it is based
> on grounds of which he could not have
> had knowledge by the exercise of
> reasonable diligence before the
> circumstances prejudicial to the
> government occurred.

Now, if the Government is able to make a particularized showing of prejudice in its ability to respond to Petitioner's motion as a result of "undue delay" by the Petitioner, then the burden shifts to the petitioner to show that the Government is not actually prejudiced or, that petitioner's delay was based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstance prejudicial to the government occurred.  **UNITED STATES -v- GUTIERREZ**, 839 F.2d 648, 650-51 (10th. Cir. 1988), quoting Rule 9(a) (other citations omitted); see also, **UNITED STATES -v- AGUILAR**, 90 F.Supp. 2d 1152 (D.Colo. 2000).

The Court will find that the alleged claims by the petitioner is on a solid foundation, which can be found in the Transcripts from the Sentencing Hearing.  These records are available to the Court, as well as, to the Government in the record archives. Therefore, the Government should not attempt to invoke **RULE 9 (a)**, cause no additional information is need for the Government to respond.

This Court has the authority to imposition **RULE 9(a)** and **RULE 12** to permits **RULE 45(b) F.R.C.P.** to hear and decide this motion. The mandate should be recalled, due to the circumstances of the procedural default, that was cause by petitioner's counsel for his ineffectiveness and petitioner's lack of knowledge of the law. This Court should take in consideration of the mitigating circumstances and grant the petitioner's motion.  In the event this Court makes a determination to decide against the Petitioner, this Court has a responsibility to correct its "clerical error" and amend its judgement under the provision of **RULE 36 F.R.C.P.**.

Therefore, the petitioner prays that all relief is granted and that the petitioner is order back to Court to be re-sentenced in the correct Sentencing Guidelines or be order to be immediate release from the Bureau of Prisons.

Date: January 4, 2001                    Respectfully Submitted,

X *Arturo Pena*

Arturo Pena
77673-079
P.O. Box 26020
Beaumont, Texas 77720-6020

## CERTIFICATE OF SERVICE

I, **Arturo Pena**, hereby certify, pursuant to title 28 U.S.C. § 1746, that a true and correct copy of this foregoing instrument has been mailed postage pre-paid on this _____ day of January, 2001, by depositing the required number of originals and copies into the prison mail collection box, in a sealed envelope, postage affixed and addressed correctly to the following:

U.S. Attorney's Office
AUSA Jody Young
1036 E. Levee Street
Brownsville, Texas 78520

X Arturo Pena
Arturo Pena
Pro Se Litigant